**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **TRAXCELL TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | Civil Case No. 6:21-cv-01312-ADA |
| | § | |
| **GOOGLE LLC,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS TRAXCELL'S
<u>AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................... 3

III.  LEGAL STANDARD ......................................................................... 4

IV.  ARGUMENT ...................................................................................... 4

    A.    Traxcell's Amended Complaint Fails To State A Claim For Direct
           Infringement Of The '147 Patent .................................................... 4

           1.    Traxcell's Amended Complaint Confirms That Google Does Not
                 Control Each Component Of The Claimed System ................................... 5

           2.    Traxcell's Alleged "Use" Of The Claimed System By Google Is
                 Unsubstantiated And Contradicted By The Amended Complaint ............. 8

           3.    Traxcell's Infringement Claim Includes Several Impossibilities................ 9

    B.    Traxcell's Complaint Fails To State A Claim For Indirect Infringement Of
           The '147 Patent ........................................................................... 12

           1.    Traxcell's Claims Of Contributory Infringement Are Implausible .......... 13

           2.    Traxcell's Claims Of Induced Infringement Are Implausible ................. 15

    C.    Traxcell Fails To State A Claim For Willful Infringement Of The '147
           Patent.......................................................................................... 16

    D.    A Dismissal With Prejudice Is Appropriate........................................ 18

II.   CONCLUSION .................................................................................. 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter,*
    620 F. App'x 934 (Fed. Cir. 2015) ....................................................................4, 16

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.,*
    709 F.3d 1348 (Fed. Cir. 2013)...............................................................................5

*Arris Grp., Inc. v. British Telecomm. PLC,*
    639 F.3d 1368 (Fed. Cir. 2011)..............................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................................................*passim*

*Bayer Healthcare LLC v. Baxalta Inc.,*
    989 F.3d 964 (Fed. Cir. 2021)...............................................................................17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................................*passim*

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
    681 F.3d 1323 (Fed. Cir. 2012)..............................................................................16

*Bot M8 LLC v. Sony Corp. of Am.,*
    4 F.4th 1342 (Fed. Cir. 2021) .............................................................9, 10, 11, 12

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,*
    748 F.3d 631 (5th Cir. 2014) .................................................................................6

*Broadcom Corp. v. Qualcomm Inc.,*
    543 F.3d 683 (Fed. Cir. 2008).................................................................................16

*Castlemorton Wireless, LLC v. Bose Corp.,*
    No. 6:20-cv-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)............................13

*De La Vega v. Microsoft Corp.,*
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)..........................4

*DSU Med. Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006)..............................................................................16

*ESW Holdings, Inc. v. Roku, Inc.,*
    No. 6-19-CV-00044-ADA, 2021 WL 1069047 (W.D. Tex. Mar. 18, 2021)...................5, 7, 9

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  365 F.3d 1054 (Fed. Cir. 2004)................................................................................13

*Grecia v. McDonald's Corp.*,
  724 F. App'x 942 (Fed. Cir. 2018) ..........................................................................8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016)............................................................................17, 18, 19

*Hypermedia Navigation LLC v. Google LLC*,
  No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal Apr. 2, 2019)...................9, 18, 20, 22

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017)...........................................................................5, 7, 8

*Jenkins v. LogicMark, LLC*,
  No. 3:16-cv-751-HEH, 2017 WL 376154 (E.D. Va. Jan. 25, 2017) ......................................18

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
  No. 1-14-cv-134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015)....................................16

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
  No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) .......................................19

*Manville Sales Corp. v. Paramount Sys., Inc.*,
  917 F.2d 544 (Fed. Cir. 1990)............................................................................17

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
  No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018).....................14, 16, 18

*Modern Font Applications LLC v. Peak Restaurant Partners, LLC*,
  No. 2:19-CV-221 TS, 2020 WL 5370948 (D. Utah 2020) ......................................................21

*Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*,
  No. 6:20-cv-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ...........................13

*Nobelbiz, Inc. v. Insidesales.com, Inc.*,
  No. 6:13-CV-360-MHS, 2014 WL 12378804 (E.D. Tex. Oct. 14, 2014) ..............................14

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)...........................17

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
  No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ....................10, 11, 12

*Rios v. City of Del Rio, Tex.*,
  444 F.3d 417 (5th Cir. 2006) ..................................................................6, 8, 13, 15

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
　　No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) .................................20

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
　　No. 5:19-CV-243-H, 2020 WL 5500238 (N.D. Tex. Sept. 11, 2020) ......................................7

*Sonrai Sys., LLC v. AMCS Grp Inc.*,
　　No. 16 C 9404, 2017 WL 4281122 (N.D. Ill. Sept. 27, 2017)................................................15

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
　　930 F.3d 1295 (Fed. Cir. 2019)......................................................................................17, 18

*State Indus., Inc. v. A.O. Smith Corp.*,
　　751 F.2d 1226 (Fed. Cir. 1985)......................................................................................14, 16

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
　　987 F.3d 1358 (Fed. Cir. 2021)...................................................................................5, 7, 9

*TecSec, Inc. v. Int'l Bus. Machines Corp.*,
　　769 F. Supp. 2d 997 (E.D. Va. 2011), *aff'd*, 466 F. App'x 882 (Fed. Cir. 2012).................5, 7

*VLSI Tech. LLC v. Intel Corp.*,
　　No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) .............................................19

*Walch v. Adjutant General's Dep't of Tex.*,
　　533 F.3d 289 (5th Cir. 2008) ..............................................................................................6

## Statutes

35 U.S.C. § 271(a) .........................................................................................................4, 5

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Google LLC ("Google") moves to dismiss Plaintiff Traxcell Technologies, LLC's ("Traxcell") Amended Complaint in its entirety.

## I.    INTRODUCTION

Traxcell's Amended Complaint for infringement of U.S. Patent No. 10,820,147 (the "'147 patent") continues to be defective.  Dkt. No. 23.

First, with respect to direct infringement, the asserted claims are directed to a system that includes components such as a "wireless communications network," which acquires information indicative of a mobile device's location to determine the device's location and deliver navigation information.  *See* Dkt. No. 23 at 3-108.  By Traxcell's own admissions in the Amended Complaint, the accused wireless communication networks are provided by third-party carriers, such as Verizon, AT&T, and T-Mobile -- *i.e.*, networks that are not owned, controlled, or directed by Google.

With no possibility that Traxcell can allege that Google makes or sells or offers to sell an infringing system, Traxcell must then show that Google "uses" the system for Traxcell to claim direct infringement.  But Traxcell fails to plausibly plead a direct infringement claim through alleged "use" by Google.  Instead, Traxcell repeatedly admits in the Amended Complaint that the alleged infringement requires ***end users*** to configure their devices in a certain manner and execute a series of commands using a combination of components, some of which are provided by third parties.

Beyond this, Traxcell's Amended Complaint establishes that its claim is not only implausible, but impossible because Traxcell's factual allegations in the Amended Complaint contradict its theory of infringement.  Moreover, Traxcell's Amended Complaint is replete with ambiguous and inconsistent identifications of the accused functionality that fail to put Google

1

on notice about which devices and functionality are accused in this case.

Second, neither the original Complaint nor the Amended Complaint allege a single fact to plausibly establish Google's requisite knowledge of the '147 patent so as to plead a claim for indirect or willful infringement.  Traxcell continues to improperly rely on the date the '147 patent issued, the date a grandparent application issued as the '284 patent, or the date a grandparent application was allegedly cited to Google during an unspecified patent prosecution, none of which establish Google's knowledge of the '147 patent.  Moreover, Traxcell's failure to allege any plausible basis for direct infringement is fatal to its claims of indirect and willful infringement, and Traxcell's bare recitations of the legal standard for contributory and induced infringement are insufficient as a matter of law.  Traxcell's conclusory assertion that "Google Maps application and Google Server . . . [have] no substantial non-infringing use" is likewise contradicted by Traxcell's factual allegations in the Amended Complaint that concede that Google Maps can operate without knowing a user's current location, that a user can use Google Maps in offline mode without using traffic information, or that if a user saves an offline "route," the "directions won't start from your current location" but will start from the location where the route was initially saved.  Dkt. No. 23 at 23, 30, 40, 44, 45, 49, 55, 60.  Nor does Traxcell identify any act of infringement by a third party that Google specifically intended to induce with knowledge of the '147 patent.

Accordingly, Traxcell's Amended Complaint should be dismissed with prejudice. Traxcell has already amended its pleading once, failed to address any of the deficiencies that Google identified, and thereafter Traxcell rejected several reasonable opportunities to amend the pleading further even after being on notice of numerous remaining deficiencies.  Any further amendments would be futile, and the Amended Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Claim 1 of the '147 patent, which is the only claim Traxcell charted in its Amended Complaint, is a system claim that requires, *inter alia*, a "wireless communications network" and a "wireless mobile communications device," each of which contain several components:

1. A wireless communications system including:

a first radio-frequency transceiver within a wireless mobile communications device and an associated first antenna to which the first radio-frequency transceiver is coupled, wherein the first radio-frequency transceiver is configured for radio-frequency communication with a wireless communications network;

a first processor within the wireless mobile communications device coupled to the at least one first radio-frequency transceiver programmed to receive information indicative of a location of the wireless mobile communications device and generate an indication of a location of the wireless mobile communications device with respect to geographic features according to mapping information stored within the wireless mobile communications device,

and wherein the first processor determines user navigation information and displays the user navigation information according to the location of the wireless mobile communications device with respect to the geographic features and a destination specified at the wireless mobile communications device,

wherein the first processor further sends the user navigation information to the network as a number of segments,

wherein at least one other processor outside the network updates the user navigation information in conformity with traffic congestion information accessible to the at least one other processor outside the network by computing a numerical value for the segments corresponding to the expected time to travel through the segments, updates the user navigation information in conformity with the numerical values for the segments, and sends the updated user navigation information to the wireless mobile communications device;

at least one second radio-frequency transceiver and an associated at least one second antenna of the wireless communications network to which the second radio-frequency transceiver is coupled; and

a second processor coupled to the at least one second radio-frequency transceiver programmed to acquire the information indicative of a location of the wireless mobile communications device,

wherein the second processor selectively acquires the information indicative of a location of the wireless mobile communications device dependent on the setting

3

of preference flags,

wherein the second processor acquires the information indicative of a location of the wireless mobile communications device if the preference flags are set to a state that permits tracking of the wireless mobile communications device, and

wherein the second processor does not acquire the information indicative of the location of the wireless mobile communications device if the preference flags are set to a state that prohibits tracking of the wireless mobile communications device.

Dkt. No. 23-1 ('147 patent), at 127:63-128:50.

### III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is warranted if the plaintiff fails to allege enough facts to "state a claim to relief that is plausible on its face." *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *2 (W.D. Tex. Feb. 11, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Addiction & Detoxification Inst. L.L.C. v. Carpenter,* 620 F. App'x 934, 936 (Fed. Cir. 2015) ("*Twombly* and *Iqbal* require that a complaint for patent infringement contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed.").  A plaintiff fails to meet this standard by providing a "bare averment that he wants relief and is entitled to it." *Twombly,* 550 U.S. at 555 n.3.

### IV.    ARGUMENT

#### A.   Traxcell's Amended Complaint Fails To State A Claim For Direct Infringement Of The '147 Patent

A defendant is liable for direct infringement under Section 271(a) if "without authority [, the defendant] makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent

4

therefor."  35 U.S.C. § 271(a).  The "party must commit all the acts necessary to infringe the patent, either personally or vicariously."  *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013).  Direct infringement of a patented system requires that a party "put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it."  *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)).  The party must therefore control and benefit from "each element" of the system, not merely one portion thereof.  *Id*. at 1329; *see also Synchronoss Techs., Inc. v. Dropbox, Inc.,* 987 F.3d 1358, 1369 (Fed. Cir. 2021) ("Direct infringement by 'use' of a claimed system requires use of each and every element of the system."); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6-19-CV-00044-ADA, 2021 WL 1069047, at *5 (W.D. Tex. Mar. 18, 2021) (accused infringer cannot infringe system claim where it "neither controls each system component recited in [the claim] nor makes, sells, or offers to sell [all of] the claimed system."); *TecSec, Inc. v. Int'l Bus. Machines Corp.,* 769 F. Supp. 2d 997, 1010 (E.D. Va. 2011), *aff'd*, 466 F. App'x 882 (Fed. Cir. 2012), and *rev'd on other grounds,* 731 F.3d 1336 (Fed. Cir. 2013) (citing *Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1252 (Fed. Cir. 2000)) ("To prove that [defendant] directly infringed the system claims, plaintiff must show that [defendant] made, used, sold, offered for sale, or imported the entire claimed system(s).").

> ### 1. Traxcell's Amended Complaint Confirms That Google Does Not Control Each Component Of The Claimed System

The original Complaint's allegations were facially deficient because they confirmed that Google did not control the entire claimed system.  Traxcell admitted that third parties, such as Verizon, AT&T, and T-Mobile, exclusively own and operate the claimed "wireless communications network."  Dkt. No. 1, at 4, 10, 69.

In its Amended Complaint, Traxcell fails to address the substance of this core deficiency.  Instead, the Amended Complaint adds conclusory allegations that Google "makes, uses, offers to sell, and/or sells within or imports into the U.S., wireless-network systems" and that Google "controlled the systems, devices, and methods . . . as set out in the evidence charts above."  Dkt. No. 23 at 109.  Such allegations are not entitled to any weight because they are bare legal conclusions devoid of any facts.  *See Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555, n.3; *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).

Furthermore, these legal conclusions are contradicted by the chart Traxcell relies on for support.  Traxcell defines the "Accused System" as the "Google Maps online navigation service and the Google Maps server side or cloud infrastructure needed to provide the service."  Dkt. No. 23 at 4.  But the "Accused System" constitutes only a small subset of the components needed to practice the "wireless communications system" of claim 1; Traxcell concedes that the Accused System does not comprise certain transceivers with antennas that make up the claimed "wireless communication system"—listed in "Exhibit A" incorporated by reference in the chart in the Amended Complaint[1]—are "made, used, or sold by" ***third parties*** such as AT&T, Ericsson, Huawei, Nokia, Sprint, T-Mobile, and Verizon.   *See* Ex. A at 1, 4, 13, 18-20, 24.[2] Similarly, Traxcell repeatedly alleges in the Amended Complaint that third parties control the

---

[1] Traxcell did not file the Exhibits incorporated by reference in its Amended Complaint.  Those exhibits, however, were served on Google on February 2, 2022, and provide the basis for Traxcell's infringement claim.  No dispute exists as to their authenticity.  Thus, they are attached here and are properly considered on a motion to dismiss.  *See, e.g.*, *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) ("The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."); *Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) ("No party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss.").

[2] "Ex." refers to the Exhibits attached to the accompanying Declaration of Assad H. Rajani.

alleged "wireless communication network" element of claim 1.  *See, e.g.*, Dkt. No. 23 at 23

("Wireless communication network (*e.g.*, Verizon, AT&T, T-Mobile, etc.) used to estimate the

location of the Wireless communication device."); *id.* at 26, 34, 68, 69, 72, 73, 89, 94, 101

(same); *id.* at 109 ("[C]laim elements [are] met by third party wireless communication networks

such as Verizon, AT&T, and T-Mobile.").

As described above, merely alleging that Google makes one component of the system

available, such as an application, is insufficient to state a claim for direct infringement of a

claimed system that also includes elements that Traxcell alleges are provided only by third

parties.  *See, e.g.*, *Synchronoss*, 987 F.3d at 1369; *Intellectual Ventures*, 870 F.3d at 1328; *ESW

Holdings*, 2021 WL 1069047, at *5; *TecSec*, 769 F. Supp. 2d at 1010; *see also Soar Tools, LLC

v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2020 WL 5500238, at *4, *8 (N.D. Tex. Sept.

11, 2020) (plaintiff failed to "plausibly allege the defendant's connection to the accused device

in order to adequately state a claim for relief" and, as such, plaintiff "may not conduct discovery

until after it has cured the deficiencies the Court has identified").  Thus, Traxcell's Amended

Complaint fails to allege that Google controls each component of the claimed system.

Likewise, the Amended Complaint fails to properly allege that Google benefitted from

each and every element of the claimed system.  Traxcell alleges that Google "derives benefit

from claim elements met by third party wireless communication networks" based only on the

circular theory that Google benefits "by putting those functionalities into use, *i.e.*, control[s]

them, as per the evidence charts mentioned above."  Dkt. No. 23 at 109.  But Traxcell does not

state in its charts that Google controls each and every element of the claimed system.

Traxcell also asserts that Google "obtains the benefits" of "[r]eceiving information

indicative of a location of the wireless mobile communications device" and "[r]eceiving updates

of navigation information in conformity with traffic congestion information."  Dkt. No. 23 at

110.  These are legal conclusions that merely parrot the language of claim 1 without identifying what the alleged benefits are.  Such conclusory allegations are deficient to meet the plausibility standard.  *See Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555, n.3; *Rios,* 444 F.3d at 421.

Traxcell's allegations that "[o]ther benefits tied to the use of the wireless communications networks" include "targeted marketing," "facilitat[ing] transactions," and using location data "to drive sales of Google wireless devices" are likewise insufficient.  Dkt. No. 23 at 110.  They lack factual support and bear no resemblance to the asserted claims, which have nothing to do with targeted marketing, facilitating transactions, or driving sales.  *See Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018) (rejecting plaintiff's allegations that amounted to defendant "benefit[ing] from the claimed system as a whole").  Any "benefit" must be "tangible, not speculative, and tethered to the claims."  *Id.*; *see also Intellectual Ventures*, 870 F.3d at 1329 (the benefit must be from "each and every element of the claimed system.").

### 2.    Traxcell's Alleged "Use" Of The Claimed System By Google Is Unsubstantiated And Contradicted By The Amended Complaint

Traxcell states in its Amended Complaint that "infringement is not dependent on ownership of all limitations" of the system of claim 1 because "***use of a system*** can infringe." Dkt. No. 23 at 4 (emphasis added).  In its claim chart, however, Traxcell fails to provide any factual basis for its allegation that Google uses the system of claim 1.  To the contrary, Traxcell repeatedly admits that the alleged infringement requires ***end users*** to configure their devices in a certain manner and execute a series of commands using a combination of components including from third parties.  *See, e.g.*, Dkt. No. 23 at 31 ("After completing the setup process users can validate and control settings for device location via the Settings app[.]"); *id.* at 32 ("Users can choose to disable GLS during the set-up process"); *id.* at 45 ("The device user locates the device's current location on the google map app . . . The user can then navigate[.]");

*id.* at 70 ("The user of the wireless device can select the method of the location estimation."). Traxcell has failed to plead any plausible basis for a direct infringement claim through alleged "use" by ***Google***.  Offering an application for consumer use, like Google does with Google Maps, is inadequate for pleading infringement based on use of a claimed system such as the one here.  As the Federal Circuit explained, "[s]upplying the software for the customer to use is not the same as using the system."  *Synchronoss*, 987 F.3d at 1369 (quoting *Centillion*, 631 F.3d at 1286).  And Traxcell's citation to Google documents that are "merely providing instructions to users regarding how they may use [Google's] product [] does not suffice as direction and control" under this Court's precedent.  *See ESW Holdings*, 2021 WL 1069047, at *5.

### 3.    Traxcell's Infringement Claim Includes Several Impossibilities

Traxcell's Amended Complaint establishes that its claim is not only implausible, but impossible.  *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353–54 (Fed. Cir. 2021) (infringement allegations were "conclusory and at times contradictory," because "[w]here, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim").  *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *3-5 (E.D. Tex. Nov. 17, 2020) ("While the 'fair notice' standard is lenient, litigants may nonetheless 'plead themselves out of court by alleging facts that establish defendants' entitlement to prevail.' . . . . To survive a motion to dismiss, a stated claim must be 'plausible on its face.' Qwikcash's self-contradictory and incoherent factual allegations of direct infringement fail to meet this standard. For these reasons, Qwikcash's direct infringement claim will be dismissed." (internal citations omitted)).

*First*, in addition to a "first processor" and a "second processor," the system of claim 1 also requires "at least one other processor ***outside the network*** [that] updates the user navigation

9

information in conformity with traffic congestion information accessible to the at least one other processor *outside the network*.”  Dkt. No. 23-1 at 128:19-22 (emphasis added).  To satisfy the “at least one other processor *outside the network*” requirement, Traxcell points to “[t]he Google Maps hardware/software *in the wireless communication network.*” Dkt. No. 23 at 57; *see also id.* at 71 (alleging that the Google Maps processors are “communicatively coupled to the second RF transceiver(s)” that comprise the base stations for wireless communication networks).  Consequently, Traxcell has not plausibly pleaded that the system includes the requisite processor outside the network, but rather has admitted that the processor that the claim requires “updates the user navigation information in conformity with traffic congestion information” is inside the network.  *See Bot M8*, 4 F.4th at 1354–55; *Qwikcash*, 2020 WL 6781566 at *3–5.

*Second*, claim 1 recites certain hardware components for the wireless communications network, such as “at least one second radio-frequency transceiver and an associated at least one-second antenna *of the wireless communications network*” and a “second processor coupled to at least one second radio-frequency transceiver.”  Dkt. 23-1 at 128:19-35 (emphasis added).  The claim also requires “at least one other processor *outside the network.*”  *Id.*  Traxcell, however, alleges that both requirements are satisfied by the *same processor* within unspecified Google Maps server hardware.  *Compare* Dkt. No. 23 at 57 *with id.* at 71.  But the same processor cannot be *both* “coupled” to the wireless communications network *and* “outside” the wireless communications network.  Traxcell’s allegations are thus implausible on their face.

*Third*, the system of claim 1 requires mapping information to be “stored within the wireless mobile communications device” and that “at least one other processor outside the network updates the user navigation information in conformity with traffic congestion information[.]”  Dkt. No. 23-1 at 128:9-29.  Traxcell alleges that an “offline map” is stored on the mobile communications device.  Dkt. No. 23 at 42-45.  But the Amended Complaint

confirms that when an offline map is used, "you won't have traffic info."  *Id.* at 45.  Thus, Traxcell's Amended Complaint fatally admits that offline map functionality would disable the traffic functionality upon which it relies to allege infringement.  *Compare* Dkt. No. 23 at 42-45 *with id.* 64-67; *see also Bot M8*, 4 F.4th at 1354–55; *Qwikcash.*, 2020 WL 6781566 at *3-5.

       *Fourth*, the system of claim 1 also requires that "the ***second processor*** does not acquire the information indicative of the location of the wireless mobile communications device if the preference flags are set to a state that prohibits tracking of the wireless mobile communications device."  Dkt. No. 23-1 at 128:45-50 (emphasis added).  In support, Traxcell alleges that an end user turning OFF the "Location" feature on his or her phone satisfies this claim element.  *See, e.g.*, Dkt. No. 23 at 95 ("the Google Map hardware/software will not be able to locate the Wireless communication device (Exhibit B) if 'Location' flag is turned OFF."); *id.* ("Plaintiff contends that if the preference flags are not enabled (i.e., the wireless-mobile-communication device's user has not granted permission), LBS provider application hardware/software, will not be able to determine and track the location of the Wireless communication device."); *id.* at 86, 88, 98 (same).  According to Traxcell's Amended Complaint, however, shutting OFF "Location" on the mobile device would also render impossible functionality required to practice other limitations of claim 1.  For example, regardless of the presence flags and what information is selectively sent to the second processor, the claim requires that the first processor (within the wireless mobile communications device) "receive information indicative of a location of the wireless mobile communications device and generate an indication of a location of the wireless mobile communications device with respect to geographic features according to mapping information stored within the wireless mobile communications device, and wherein the first processor determines user navigation information and displays the user navigation information according to the location of the wireless mobile communications device with respect to the

geographic features and a destination specified at the wireless mobile communications device."
Dkt. No. 23-1 at 128:3-17.  As admitted in the Amended Complaint, turning Location OFF
would make it impossible to practice the functionality as alleged in the Amended Complaint.
*See, e.g.*, Dkt. No. 23 at 47 ("Before you begin, verify and ensure that location is enabled on
your phone.  It has to be enabled so that your device can determine your current location."); *id.*
at 98 ("When Location is off . . . Your phone's location isn't shared with any apps.  Features
that use location may not work properly."); *id.* at 85-86, 88 ("Google Map hardware/software
will . . . not be able to locate the Wireless communication device . . . if 'Location' flag is turned
. . . OFF").  Thus, Traxcell's Amended Complaint admits that claim 1 cannot be infringed
because it is impossible to have "Location" functionality both ON and OFF at the same time.
*See Bot M8*, 4 F.4th at 1354–55; *Qwikcash.*, 2020 WL 6781566 at *3–*5.

### B.  Traxcell's Complaint Fails To State A Claim For Indirect Infringement Of The '147 Patent

Traxcell's allegations that Google contributorily infringes and induces infringement of
the '147 patent also do not advance plausible theories for relief.  Dkt. No. 23 at 110-13.
Traxcell's incomplete and threadbare recitation of legal standards does not meet the standard set
forth in *Iqbal* and *Twombly* to survive a motion to dismiss.  *Iqbal,* 556 U.S. at 678; *Twombly,*
550 U.S. at 555, n.3; *see also Rios*, 444 F.3d at 421 ("[C]onclusory allegations or legal
conclusions masquerading as factual conclusions will not suffice to prevent a motion to
dismiss.") (internal quotations omitted); *Monolithic Power Sys., Inc. v. Meraki Integrated
Circuit (Shenzhen) Tech., Ltd.*, No. 6:20-cv-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex.
Sept. 1, 2021) (holding that failure to "contain any facts, other than mere recitations of the
elements" are not enough to sustain a claim for indirect infringement).

### 1.     Traxcell's Claims Of Contributory Infringement Are Implausible

A party can only be found to contributorily infringe a patent if the accused product is used to (i) "commit acts of direct infringement," (ii) "constitute[es] a material part of the invention," (iii) the party knew the accused product was "especially made or especially adapted for use in an infringement," and (iv) the accused product is "not a staple article or commodity of commerce suitable for substantial noninfringing use." *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) (quoting 35 U.S.C. § 271(c)); *see also Golden Blount, Inc. v. Robert H. Peterson Co.,* 365 F.3d 1054, 1061 (Fed. Cir. 2004) (explaining that contributory infringement requires that the defendant "knew that the combination for which its components were especially made was both patented and infringing."). Traxcell's allegations of contributory infringement fail for four reasons, each of which independently warrants dismissal.

*First*, Traxcell's allegation of pre-suit knowledge of the patent-in-suit remains deficient as a matter of law. *See Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-cv-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020) (dismissing where the "complaint does not plead any facts that would support an allegation of pre-suit knowledge"). Neither the original Complaint nor the Amended Complaint alleges a single fact to plausibly establish Google's requisite knowledge of the '147 patent. Traxcell improperly relies on the "date of the ['147] patent's issuance." *See* Dkt. No. 23 at 111-13. But issuance of a patent alone does not establish knowledge of the patent. *See Nobelbiz, Inc. v. Insidesales.com, Inc.*, No. 6:13-CV-360-MHS, 2014 WL 12378804, at *3 (E.D. Tex. Oct. 14, 2014) ("[C]ontributory infringement requires actual knowledge, not just constructive knowledge based on issuance and publication of a patent."). Alternatively, Traxcell alleges that Google had pre-suit knowledge of the '147 patent "from the issuance of the [U.S. Patent No. 8,977,284]." *Id.* This too makes no sense. The '284 patent issued more than 5 years *before* the '147 patent; one cannot have knowledge of a patent

13

before it exists.  *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).   Further, Traxcell alleges that Google had pre-suit knowledge of the '147 patent by virtue of the ***earliest parent patent's underlying application*** being allegedly cited by the USPTO in an unspecified Google patent application.  Dkt. No. 23 at 112.  The '284 parent patent is not asserted in this case.  Mere awareness of a patent application—from an unasserted parent patent—does not establish pre-suit knowledge of the patent-in-suit to sustain an indirect infringement claim.  *Meetrix IP, LLC v. Cisco Sys., Inc.,* No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018) ("[A]ctual notice stemming from [] prosecution activity is too attenuated to plausibly infer that [defendant] had pre-suit knowledge."); *see also State Indus.,* 751 F.2d at 1236 ("Filing an application is no guarantee any patent will issue, and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.").

*Second*, Traxcell states that Google "has known and should have known that it's [sic] products and service, . . . are especially made or especially adopted for use in an infringement." Dkt. No. 23 at 112.  Traxcell's bare recitation of the legal standard is unsupported by any well-pleaded facts and is not entitled to any weight in establishing the sufficiency of the pleading.

*Third*, Traxcell alleges that the "Google Maps application and Google Server" have "no substantial non-infringing use[.]"  Dkt. No. 23 at 112.  Traxcell's bare legal conclusion cannot survive a motion to dismiss.  *See Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555, n.3; *Rios*, 444 F.3d at 421.  Traxcell's allegation is contradicted by the Amended Complaint, which repeatedly confirms the existence of substantial non-infringing uses.  *See Sonrai Sys., LLC v. AMCS Grp Inc.*, No. 16 C 9404, 2017 WL 4281122, at *8 (N.D. Ill. Sept. 27, 2017) (complaint disclosed substantial non-infringing uses).  For example, Traxcell concedes that Google Maps can operate without knowing a user's current location.  Dkt. No. 23 at 23, 40, 49 ("If the blue

14

dot is not showing, or the dot is gray, this means that we can't find your current location and we're showing you the last location you visited."); *id.* at 30 (Location Services "Opt-Out").  The Amended Complaint states that in offline mode Google Maps works without providing traffic information.  *Id.* at 45, 55.  The Amended Complaint states that if an end user saves an offline "route," the "directions won't start from your current location," but from where the route was initially saved.  *Compare id.* at 44, 60 *with* Dkt. No. 23-1 at 128:11-14.

    *Fourth*, Traxcell does not allege any plausible basis for direct infringement because its infringement theories are impossible in several respects.  *See* Section IV.A.3 *supra*.

### 2.    Traxcell's Claims Of Induced Infringement Are Implausible

    The Amended Complaint similarly fails to state a plausible claim for induced infringement.  "To properly state a claim for induced infringement, a complaint must plead facts that plausibly show that the defendant has specific intent to cause another party's direct infringement and knew that the other party's acts constituted infringement."  *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.,* No. 1-14-cv-134-LY, 2015 WL 3513151, at *5 (W.D. Tex. Mar. 24, 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)); *see also Addiction & Detoxification Inst. L.L.C.,* 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement.").  Traxcell is required to plausibly allege that Google was "*aware of the ['147] patent, knows or should have known that the encouraged acts constitute infringement of the ['147] patent, and has an intent to cause the encouraged acts*." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 698 (Fed. Cir. 2008) (emphasis in the original).  Further, "[t]he requirement that the alleged infringer knew or should have known his

actions would induce actual infringement necessarily includes the requirement that he or she

knew of the patent." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006).

Traxcell's allegations of inducement fail for three reasons, each warranting dismissal.

*First*, as explained above, Traxcell has insufficiently alleged Google's pre-suit

knowledge of the '147 patent.  *See Meetrix IP*, 2018 WL 8261315, at *2; *See State Indus.,* 751

F.2d at 1236.  *See* Section VI.B.1, *supra*.

*Second*, Traxcell alleges that Google making available "Google Maps application as

well as making the Google Maps application and the Google Maps servers available to its

customers and other parties" is evidence of its intent to cause direct infringement by others.

Dkt. No. 23 at 110-11.  But encouraging use of Google Maps is not evidence of specific intent

to encourage infringement of the claimed system.  *See Manville Sales Corp. v. Paramount Sys.,

Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("It must be established that the defendant possessed

specific intent to encourage another's infringement and not merely that the defendant had

knowledge of the acts alleged to constitute inducement.")

*Third*, as explained above, Traxcell does not allege any plausible basis for direct

infringement.  *See* Section IV.A.3, *supra*.

### C.  Traxcell Fails To State A Claim For Willful Infringement Of The '147 Patent

A claim for willful infringement must allege that the defendant at least "'(1) knew of the

patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it

knew, or should have known, that its conduct amounted to infringement of the patent.'" *Parity

Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D.

Tex. July 26, 2019) (*quoting Valinge Innovation AB v. Halstead New England Corp.*, No. 16-

1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)).  On this last element,

16

willfulness "requires [evidence of] deliberate or intentional infringement." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021).  Thus, Traxcell is required to allege facts that show that Google's "conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016) (willful infringement described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.").

Traxcell's willfulness allegations fail for three reasons, each warranting dismissal.

*First*, as discussed above, Traxcell fails to adequately plead facts to plausibly demonstrate that Google had pre-suit knowledge of the '147 patent.  Section IV.B.1, *supra*.

*Second*, Traxcell's bare recitation of the legal standard is devoid of any facts.  Traxcell alleges, for example, that "[a]fter acquiring that knowledge, Google continued to directly infringe the asserted claims of the patent-in-suit, as previously explained in this complaint." Dkt. No. 23 at 113.  But Traxcell does not allege any plausible basis for direct infringement by Google.  *See* Sections IV.A.1, IV.A.2, *supra*.  Traxcell alleges that "Google has also knowingly continued to indirectly infringe the asserted claims, both by inducement infringement and by contributory infringement, as previously explained in this complaint."  Dkt. No. 23 at 113.  This too is insufficient because Traxcell does not allege any plausible basis for indirect infringement, including requisite knowledge of acts of direct infringement by others.  *See* Section IV.B, *supra*.

*Third*, the Amended Complaint is devoid of any facts regarding Google's allegedly intentional, deliberate infringement that "rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement."  *SRI Int'l*, 930 F.3d at 1309; *see also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *4 (N.D. Cal Apr. 2, 2019) ("[N]othing in the complaint provides specific factual allegations about [the

17

alleged infringer]'s subjective intent or details about the nature of [the alleged infringer]'s conduct to render a claim of willfulness plausible, and not merely possible."); *Meetrix IP,* 2018 WL 8261315, at *3 (plaintiff "does not allege any facts raising a plausible inference of the egregious behavior required under *Halo*."); *Jenkins v. LogicMark, LLC,* No. 3:16-cv-751-HEH, 2017 WL 376154, at *5 (E.D. Va. Jan. 25, 2017) (dismissing claim with "naked accusations devoid of any details to warrant their plausibility").

*Lastly*, Traxcell has failed to allege facts that would support a claim of post-suit willful infringement.  *See M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) ("Assuming . . . Igloo continued its manufacturing its infringing products, this would simply be the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness. . . . MCI has offered no allegations suggesting that Igloo deliberately re-dedicated itself to infringing after being served with the complaint."); *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2019 WL 1349468, at *1 (D. Del. Mar. 26, 2019) ("[T]the complaint itself cannot serve as the basis for a defendant's actionable knowledge," because "[t]he purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim").  And even assuming Traxcell's pleading could serve as the basis for notice for willful infringement, it is futile because Traxcell has failed to properly plead any acts of direct and indirect infringement for the reasons stated above.

### D.  A Dismissal With Prejudice Is Appropriate

Traxcell has not performed an adequate pre-filing investigation to present a plausible claim for infringement.  Any further amendments are unlikely to cure these deficiencies.

After Google moved to dismiss Traxcell's deficient Complaint, Traxcell responded by filing the Amended Complaint.  Dkt. Nos. 12, 23.  Although Traxcell added conclusory and unsubstantiated allegations in its Amended Complaint, it failed to substantively address the

deficiencies that Google pointed out in its first motion to dismiss. Like its original Complaint, Traxcell's Amended Complaint is rife with legally deficient allegations, contradictory and impossible infringement theories, and vague allegations that regurgitate the legal standard but have no factual support and provide no notice of what is supposed to be at issue.  Indeed, Traxcell's Amended Complaint includes an allegation that appears to be copied-and-pasted from another litigation.  *Compare* Dkt. No. 23 at 1 ("***Google*** designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States . . . iPods") *with* Ex. B  at 1 ("***Apple*** designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States . . . iPods") (emphasis added).  Moreover, Traxcell's sprawling claim chart, embedded in its Amended Complaint, appears to be auto-generated and unreviewed, with dozens of grammatical errors, incomplete sentences and vague identifications of accused features that suggest that the Amended Complaint was not properly vetted.  *See Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) (dismissing infringement claims with prejudice, noting, "the Court is left to wonder whether Ruby Sands performed a thorough pre-suit investigation, as required by the Federal Rules, to craft a plausible infringement theory before filing its complaint").

The meet and confer also suggests that Traxcell is unwilling or unable to cure the deficiencies in the Amended Complaint. Per OGP 4.0 at Section VI, Google met and conferred with Traxcell, apprised Traxcell of numerous deficiencies in the Amended Complaint, and proposed that Traxcell dismiss without prejudice its deficient claims for inducement, contributory infringement, willful infringement and re-plead such claims after a period of fact discovery provided that Traxcell had a good-faith, Rule 11 basis for doing so.  Traxcell declined this offer.  Ex. C at 1.  Instead, ***Traxcell*** proposed that it would file a Second Amended Complaint to address the deficiencies Google pointed out.  Google agreed.  But when Google

reached out to negotiate the response date for the Second Amended Complaint, Traxcell abruptly changed course and withdrew its proposal, averring that "[t]he court will give us the chance to amend if necessary."  Ex. C at 4.  Despite having an opportunity to address the deficiencies that Google pointed out, Traxcell failed to do so, forcing Google to file this Motion.

Where Traxcell has amended its complaint once before and further rejected offers to cure these deficiencies, this is a sufficient basis to determine that further amendments would be futile, and the Amended Complaint can properly be dismissed with prejudice.  *See Modern Font Applications LLC v. Peak Restaurant Partners, LLC*, No. 2:19-CV-221 TS, 2020 WL 5370948, at *3 (D. Utah 2020) ("Here, MFA has been provided ample opportunities to plead plausible allegations of infringement yet has failed to do so. No further amendment will be permitted.").

## II.    CONCLUSION

Google respectfully requests that the Amended Complaint be dismissed with prejudice.

Dated:  April 7, 2022                           Respectfully Submitted,

                                           */s/  J. Mark Mann*

**J. Mark Mann**
State Bar No. 12926150
Mark@TheMannFirm.com
**G. Blake Thompson**
State Bar No. 24042033
Blake@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
201 E. Howard Street
Henderson, Texas 75654
(903) 657-8540
(903) 657-6003 (fax)

Michael A. Berta
michael.berta@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3277

Nicholas H. Lee
nicholas.lee@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4156

David A. Caine
david.caine@arnoldporter.com
Assad H. Rajani
Assad.rajani@arnoldporter.com
5 Palo Alto Square
3000 El Camino Real, Suite 500
Palo Alto, CA 94306
Tel: 650-319-4500

Mark Samartino
mark.samartino@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel:  312-583-2437

***ATTORNEYS FOR DEFENDANT
GOOGLE LLC***

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 7, 2022, a true and correct copy of the

foregoing was served to the parties' counsel of record via ECF.

*/s/ J. Mark Mann*
**J. Mark Mann**
