**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **TRAXCELL TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | Civil Case No. 6:21-cv-01312-ADA |
| | § | |
| **GOOGLE LLC,** | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

    A.  Litigation History Involving The '147 Patent and Related Patents ....................... 2

    B.  *Inter Partes* Review Proceedings ........................................................... 3

    C.  Current Procedural Posture ..................................................................... 4

    D.  Stipulated Construction: "preference flags" (claims 1, 11, 19, 22) ...................... 4

III.  LEGAL STANDARD ......................................................................................... 5

IV.  '147 PATENT ..................................................................................................... 5

    A.  "[receive/receiving] information indicative of a location of the wireless mobile communications device." (claims 1 and 11) / "information indicative of a location of the wireless mobile communications device" (claims 1, 2, 3, 11, 13, 14, 17, 22, 23) ................................................... 5

        1.  "information indicative of a location" ....................................... 6

        2.  "a first processor . . . programmed to receive information indicative of a location of the wireless mobile communications device" / "receiving information indicative of a location of the wireless mobile communications device" ................................... 7

    B.  "the first processor [determines/determining] user navigation information" (claims 1, 11, and 22) ......................................................................... 9

    C.  "traffic congestion information" (claims 1, 11, 17, 22) ........................................ 13

    D.  "a second processor coupled to the at least one second radio-frequency transceiver" (claims 1, 11) ................................................................... 15

V.  CONCLUSION .................................................................................................. 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Traxcell Techs., LLC*,
    No. 3:21-cv-06059-EMC, D.I. 1 (N.D. Cal. Aug. 5, 2021) ......................................................3

*Avocent Redmond Corp. v. Rose Elecs.*,
    No. 2:06-cv-01711-RSL, Dkt. 348 (W.D. Wash. Feb. 6, 2012) .............................................16

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)..............................................................................................11

*Digeo, Inc. v. Audible, Inc.*,
    No. C05-464, Dkt. No. 47 (W.D. Wash. Mar. 27, 2006) ......................................................18

*Ecolab, Inc. v. FMC Corp.*,
    569 F.3d 1335 (Fed. Cir. 2009)................................................................................................9

*HUAWEI Techs Co., v. T-Mobile US, Inc.*,
    No. 2:16-CV-00052-JRG-RSP, 2017 WL 4385567 (E.D. Tex. Sept. 9, 2017)......................12

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    No. 3:13-cv-04987-M, 2017 WL 525708 (N.D. Tex. Feb. 9, 2017) ......................................12

*Intergraph Hardware Techs. Co. v. Hewlett-Packard Co.*,
    No. 2:02-cv-312, Dkt. 382 (E.D. Tex. Jun. 30, 2004) ...........................................................16

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech.*,
    No. 2:04-cv-00032, Dkt. 129 (E.D. Tex. Aug. 26, 2005) .................................................14, 16

*Omega Engineering, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)..............................................................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018)..................................................................................................8

*Stasher, Inc. v. Zip Top, LLC*,
    No. 18-CV-00312-ADA, Dkt. No. 42 (W.D. Tex. June 19, 2019)..........................................18

*Traxcell Techs., LLC v. Apple Inc.*,
    No. 6:21-cv-00074, D.I. 1 (W.D. Tex. Jan. 26, 2021) .............................................................3

*Traxcell Techs., LLC v. AT&T Corp.*,
    No. 2:17-cv-00718-RWS-RSP, 2019 WL 6006202 (E.D. Tex. Oct. 7, 2019) .........................8

*Traxcell Techs., LLC v. Cellco Partners d/b/a Verizon Wireless*,
  No. 6:20-cv-01175, D.I. 1 (W.D. Tex. Dec. 21, 2020).......................................................2, 3

*Traxcell Techs., LLC v. Google LLC*,
  No. 6:21-cv-00023, D.I. 1 (W.D. Tex. Jan. 13, 2021) ................................................................3

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
  15 F.4th 1121 (Fed. Cir. 2021) ...........................................................................................2, 3

**TABLE OF EXHIBITS**

| Exhibit No. | |
|---|---|
| 1 | Declaration of Michael S. Braasch, Ph.D. |
| 2 | U.S. Patent No. 10,820,147 |
| 3 | Email correspondence between counsel dated June 2, 2022 |
| 4 | U.S. Patent No. 9,549,388 |
| 5 | Petition for *Inter Partes* Review, *Apple Inc. v. Traxcell Technologies LLC*, IPR2022-00073, Paper 1 (P.T.A.B. Oct. 22, 2021) |
| 6 | Patent Owner Traxcell Technologies, LLC's Preliminary Response to Petition for *Inter Partes* Review, *Apple Inc. v. Traxcell Technologies LLC*, IPR2022-00073, Paper 6 (P.T.A.B. Feb. 17, 2022) |
| 7 | Petition for *Inter Partes* Review, *Google LLC v. Traxcell Technologies LLC*, IPR2022-00442,   Paper 1 (P.T.A.B. Jan. 18, 2022) |
| 8 | Patent Owner Traxcell Technologies, LLC's Preliminary Response to Petition for Inter Partes Review, *Google LLC v. Traxcell Technologies LLC*,  IPR2022-00442,  Paper 6 (P.T.A.B. Apr. 18, 2022) |
| 9 | U.S. Patent No. 9,510,320 |
| 10 | U.S. Patent No. 9,642,024 |
| 11 | Claim Construction Memorandum Opinion and Order, *Traxcell Techs., LLC v. AT&T, Inc. et al*, 2:17-cv-00718-RWS-RSP, Dkt. No. 171 (E.D.  Tex. Apr. 15, 2019) |
| 12 | *Navigation,* Merriam Webster Dictionary, GOOG-TRAXTECH-EXT-000022 - GOOG-TRAXTECH-EXT-000033 (from *Google LLC v. Traxcell Technologies LLC*,  IPR2022-00442, Ex. 2003) |
| 13 | *Navigation,* Cambridge Dictionary, GOOG-TRAXTECH-EXT-000013 - GOOG-TRAXTECH-EXT-000021 (from *Google LLC v. Traxcell Technologies LLC*,  IPR2022-00442, Ex. 2002) |
| 14 | *O2 Micro Int'l Ltd. v. Beyond Innovation Tech.,* No. 2:04-cv-00032, Dkt. 129 (E.D. Tex. Aug. 26, 2005) |

| | |
|---|---|
| 15 | *Intergraph Hardware Techs. Co. v. Hewlett-Packard Co.*, No. 2:02-cv-312, Dkt. 382 (E.D. Tex. Jun. 30, 2004) |
| 16 | *Avocent Redmond Corp. v. Rose Elecs.*, No. 2: 06-cv-01711-RSL, Dkt. 348 (W.D. Wash. Feb. 6, 2012) |
| 17 | Excerpts from Traxcell's February 2, 2022 Infringement Contentions, Claim 1 |
| 18 | *Stasher, Inc. v. Zip Top, LLC*, No. 18-CV-00312-ADA, Dkt. No. 42 (W.D. Tex. June 19, 2019) |
| 19 | *Digeo, Inc. v. Audible, Inc.*, No. C05-464, Dkt. No. 47 (W.D. Wash. Mar. 27, 2006) |
| 20 | *Couple*, Merriam-Webster's Collegiate Dictionary (10th Ed. 2001), GOOG-TRAXTECH-EXT-000009 - GOOG-TRAXTECH-EXT-000012 |
| 21 | April 18, 2022 Declaration of Robert Van Essen, IPR2022-00442, Ex. 2001 |

## I.      INTRODUCTION

Plaintiff Traxcell Technologies, LLC ("Plaintiff" or "Traxcell") asserts that Defendant Google LLC ("Google") infringes claims 1, 2, 3, 11, 12, 13, 14, 16, 17, 18, 22, and 23 of U.S. Patent No. 10,820,147 (the "'147 patent"), entitled "Mobile wireless device providing off-line and on-line geographic navigation information."  Ex. 2[1].  The asserted claims of the '147 patent are generally directed to a network-based determination of a mobile communications device's location for purposes of providing navigation services from the determined location to a destination.  A processor within the network of the '147 patent will determine the mobile communications device's location based on a check of whether or not a preference flag is enabled, and provide the location if the flag is set to a state that permits tracking.  Another processor outside the wireless communication network updates the navigation information based on traffic congestion.

Google's proposed constructions comport with the plain and ordinary meaning of the claims in view of the intrinsic and extrinsic record according to the understanding of a person of ordinary skill in the art ("POSITA").  In contrast, Traxcell contends that none of the disputed terms need to be construed.  Ex. 3 at 1.  Traxcell also has not explained why it disagrees with most of Google's constructions, several of which mirror ones that either Traxcell previously proposed or a court has adopted.  Google thus requests that the Court adopt its proposed constructions of only a limited number of claim terms whose meaning would not be readily understood by factfinders.

---

[1]  "Ex." refers to the Exhibits attached to the Declaration of Assad H. Rajani in support of this motion, filed concurrently herewith.

## II.    BACKGROUND

### A.    Litigation History Involving The '147 Patent and Related Patents

In October 2017, Traxcell sued Verizon and Sprint, alleging infringement of several patents, including U.S. Patent No. 9,549,388 (the "'388 patent") (Ex. 4), which is part of the same patent family as the '147 patent.  *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1127 (Fed. Cir. 2021) ("*Traxcell I*").  In *Traxcell I*, Traxcell accused the same Google Maps application and the same Google location determination functionality at issue in this case of infringing the '388 patent.  As discussed in Section IV.A.2 below, the district court construed virtually identical claim language from the '388 patent to what is at issue here. Traxcell lost *Traxcell I* on summary judgment because Google Maps did not infringe the '388 patent.  (*See* Dkt. Nos. 38-11, 38-12.)  Traxcell appealed the summary judgment order to the Federal Circuit, but lost. *Traxcell I*, 15 F.4th at 1127.

While appealing from its loss in the EDTX in *Traxcell I*, Traxcell filed second lawsuit against Verizon (along with Ericsson), asserting five other patents, including the '147 patent. *See Traxcell Techs., LLC v. Cellco Partners d/b/a Verizon Wireless*, No. 6:20-cv-01175, D.I. 1 (W.D. Tex. Dec. 21, 2020) ("*Verizon*").  Traxcell's infringement allegations regarding the '147 patent again implicated Google Maps, among other applications unrelated to Google.  *See, e.g.*, Dkt. No. 38-13; Dkt. No. 38-23 at 4-8, 12-16, 21-25, 29-33, 39-41.  On May 21, 2022, the Court explained that its May 6, 2022 order dismissing "Traxcell's split infringement allegations" applied "[a]s to the '147 Patent" and that "any direct infringement theory that relies on the activity of Google for infringement is dismissed."  *Verizon*, D.I. 84 at 1;  *Id.*, D.I. 92 at 1.  The Court also dismissed "Traxcell's claims of induced and contributory infringement[.]"  *Id.*

While the Federal Circuit appeal in *Traxcell I* was pending, Traxcell sued Apple and Google, asserting the '388 patent (which was at issue in *Traxcell I*) and a related patent. *See Traxcell Techs., LLC v. Google LLC*, No. 6:21-cv-00023, D.I. 1 (W.D. Tex. Jan. 13, 2021) ("*Traxcell II*"), (Dkt. No. 38-14); *Traxcell Techs., LLC v. Apple Inc.*, No. 6:21-cv-00074, D.I. 1. (W.D. Tex. Jan. 26, 2021), (Dkt. No. 38-15). Against Google, Traxcell accused the same Google Maps application and alleged the same unsuccessful theory of infringement as in *Traxcell I*. *Traxcell II*, Dkt. No. 38-14. But, in the fall of 2021, after the Federal Circuit affirmed summary judgment of non-infringement in *Traxcell I*, Traxcell voluntarily dismissed its lawsuits against Google and Apple. (*Traxcell II*, Dkt. No. 38-16.)

On August 5, 2021, four months before Traxcell voluntarily dismissed *Traxcell II*, Apple filed an action against Traxcell seeking a declaratory judgment of noninfringement of the '147 patent. *See Apple Inc. v. Traxcell Techs., LLC*, No. 3:21-cv-06059-EMC, D.I. 1 (N.D. Cal. Aug. 5, 2021) ("*Apple NDCA Action*"), (Dkt. No. 38-27). This case has since been voluntarily dismissed.

On December 16, 2021, while the Apple NDCA Action was pending, Traxcell filed this case against Google ("*Traxcell III*"), asserting, in part, that the same location determination functionality used by Google Maps that was at issue in *Traxcell I*, and in the recently dismissed *Verizon* case, infringes the '147 patent. Dkt. Nos. 1, 23.

### B.   *Inter Partes* Review Proceedings

Two petitions for IPR have been filed against the '147 patent. On October 22, 2021, Apple filed its petition in IPR2022-00073. Ex. 5. Traxcell filed a preliminary patent owner response. Ex. 6. As discussed below in Section IV.B, Traxcell made several disclaimers therein that are relevant to the terms for which Google seeks a construction here. When the

parties settled their co-pending district court litigation, they moved to terminate IPR proceedings before institution.

On January 18, 2022, Google filed a petition for IPR.  Ex. 7.  Traxcell filed its preliminary patent owner response.  Ex. 8.  As discussed below in Section IV.B, Traxcell made several disclaimers therein that are relevant to the terms for which Google seeks a construction here.  A decision by the PTAB on institution of review is expected by mid-July 2022.

### C.  Current Procedural Posture

Two procedural motions are pending in this case.  *First,* Google has moved to dismiss Traxcell's amended complaint.  As in the recently dismissed case against Verizon where Traxcell had alleged split direct and indirect infringement claims that depended, in part, on Google Maps, Traxcell's amended complaint in this case depends, in part, on functionality supplied by cellular network providers, such as Verizon.  Google's motion to dismiss is fully briefed.  Dkt. Nos. 31, 33, 35.  *Second*, Google's motion to transfer venue to the Northern District of California is also pending.  Dkt No. 38.  Traxcell failed to timely oppose or seek venue discovery and the motion should be deemed unopposed.  Dkt. No. 41.

### D.  Stipulated Construction: "preference flags" (claims 1, 11, 19, 22)

Claim 1 requires "a second processor . . . selectively acquiring the information indicative of a location of the wireless mobile communication device in dependence on a setting of *preference flags*."  '147 patent, 128:34-41.  The parties stipulate that "preference flags" as recited in claims 1, 11, 19, and 22 means "two or more flags to control access to tracking of the user."  Ex. 3 at 1.

### III.    LEGAL STANDARD

Per the Standing Order Governing Proceedings (OGP) 4.1, Section IV (Dkt. No. 32 at 7), Google omits a lengthy recitation of the law of claim construction.  Instead, relevant authority is identified below as to issues unique to each claim term.

### IV.    '147 PATENT

A.    **"[receive/receiving] information indicative of a location of the wireless mobile communications device." (claims 1 and 11) / "information indicative of a location of the wireless mobile communications device" (claims 1, 2, 3, 11, 13, 14, 17, 22, 23)**

| Google's Proposed Construction | Traxcell's Proposed Construction |
|---|---|
| "[receive/receiving], from the second processor, information specifying a location of the wireless mobile communications device." | Plain and ordinary meaning. |
| "information specifying a location of the wireless mobile communications device" | Plain and ordinary meaning. |

Claim 1 requires a "first processor" that is: "within the wireless mobile communications device"; "coupled to the at least one first radio-frequency transceiver"; and "programmed to *receive information indicative of a location* of the wireless mobile communications device."  '147 patent, 128:3-7.  In addition, the "at least one first radio-frequency transceiver" (to which the first processor is coupled) must also be: "within a wireless mobile communications device"; coupled to an "associated first antenna"; and "configured for radio-frequency communications with a wireless communications network."  *Id.*, 127:63-128:2.  Google's proposed construction properly explains that: (1) the plain meaning of "information indicative of a location" means "information specifying the location of the wireless mobile communications device"; and (2) such information must be received by the first processor from

5

the second processor, which acquires such information depending on the setting of preference flags.  The second processor is the only other component associated to an antenna (the second antenna) coupled to a radio-frequency transceiver (the second radio-frequency transceiver) in communication with a wireless communications network.

> ### 1.    "information indicative of a location"

Google's construction adheres to the plain meaning of the claim language because information in a "wireless communications system" cannot be indicative of a location of the wireless mobile communications device without specifying the location of that device.  Ex. 1 ("Braasch Decl."), ¶ 34.  The language specifying the other operations of the "first processor" confirms this understanding.  Specifically, the wireless mobile communications device's first processor uses the "information indicative of a location" to: (i) "generate an ***indication of a location of the wireless mobile communications device*** with respect to geographic features"; (ii) "determine[] user navigation information according to ***the location of the wireless mobile communications device*** . . ."; and then (iii) "display[ ] user navigation information ***according to the location of the wireless mobile communications device*** with respect to the g*eographic* features." *Id.*, 128:7-15; Braasch Decl., ¶¶ 36-38.  The "information indicative of the location" must specify the location of the device in order for the first processor to perform each of these operations, which involve generating a location on a map and determining and displaying user navigation information based on the specified location of the wireless mobile communications device.  Braasch Decl., ¶ 39.

That Traxcell disagrees with this interpretation is surprising for two reasons.  First, in prior litigation involving the related '320 and '024 patents (Exs. 9, 10), Traxcell stipulated that "indication of a location" was synonymous with the term "location." *See* Ex. 11 at 12-13.

Second, as noted in Section IV.B below, Traxcell argued in multiple IPR proceedings for the '147 patent that the user "navigation information" generated by the first processor comprises a user's course or way (route) from one place to another composed of a number of segments.  Ex. 6 at 5; Ex. 8 at 5.  As discussed above, the first processor cannot generate and display a user's course or way (route) from one place to another "according to the location of the wireless mobile communications device" ('147 patent, 128:11-14) without the information specifying the location of the wireless mobile communications device.  Braasch Decl., ¶ 38.  Said differently, unless a location is specified by the information received by the first processor, it would be impossible for the first processor to generate an indication of a location according to mapping information, determine user navigation information, or display user navigation information.  Braasch Decl., ¶ 39.

Traxcell has not explained why Google's construction is incorrect or departs from the plain meaning of the term "information indicative of a location."[2]  Consequently, the Court should adopt Google's construction.

> ### 2.  "a first processor . . . programmed to receive information indicative of a location of the wireless mobile communications device" / "receiving information indicative of a location of the wireless mobile communications device"

Google's construction also clarifies from where the first processor must receive the information specifying the location of the user device, namely the second processor.  According to the plain language of the claim, the second processor is the only recited component "programmed to acquire" "information indicative of a location of the wireless mobile

---

[2] During the parties' meet and confer, Traxcell declined to provide any basis for its disagreement with Google's proposal or describe what Traxcell contends the "plain and ordinary meaning" is.  Ex. 2 at 1.

communications device." '147 patent, 127:63-128:50, 130:1-55.  Moreover, it is the "second processor" that "selectively acquires the information indicative of a location" depending on the setting of "preference flags." '147 patent, 128:34-50, 130:40-55.

The "second processor" is the only component of the claimed system, and corresponding method, that is "coupled to the at least one second radio-frequency transceiver programmed to *acquire* the information indicative of a location of the wireless mobile communications device." '147 patent, 128:30-37, 130:40-55; Braasch Decl., ¶ 42.  Thus, the second processor is the only recited component of, or within, the wireless communications network[3] capable of transmitting via radio-frequency communication the "information indicative of a location of the wireless mobile communications device" to the first processor of the wireless mobile communications device, and the first processor therefore must receive that information from the second processor.  Braasch Decl., ¶ 43.

If the first processor did not receive "the information indicative of a location" from the second processor but from somewhere else, the claimed invention would be inoperable because the recited "preference flags" could not prohibit tracking of the wireless mobile communications device.  Braasch Decl., ¶ 41; s*ee, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 972 (Fed. Cir. 2018) (affirming district court's construction "fixed switching frequency" to not exclude the possibility of natural variation "because doing so would impermissibly render the claims inoperable"); *Ecolab, Inc. v. FMC*

---

[3] The at least one second radio-frequency transceiver is part "of the wireless communications network." '147 patent, 128:31-32, 130:40-45.  That the second processor is part of, or within, the wireless communications network should not be in dispute because the Eastern District of Texas determined that it was when construing virtually identical claim language from the related '388 patent.  *See Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2019 WL 6006202, at *5 (E.D. Tex. Oct. 7, 2019) ("The context of claim 1 [of U.S. Patent No. 9,549,388] requires that the second processor is within the wireless communications network.").

*Corp.*, 569 F.3d 1335, 1345 (Fed. Cir. 2009) (affirming denial of JMOL of non-infringement and holding that inoperable construction is wrong when claim language permits operable construction).  Consequently, the claim should be interpreted so as to render the system and method operable by specifying that the information indicative of a location, *i.e.*, the information specifying the location, is received by the first processor from the second processor.

Accordingly, a POSITA would have understood that "[receive/receiving] information indicative of a location of the wireless mobile communications device" means "[receive/receiving], from the second processor, information specifying a location of the wireless mobile communications device."  Braasch Decl., ¶ 44.

**B.**     **"the first processor [determines/determining] user navigation information" (claims 1,  11, and 22)**

| Google's Proposed Construction | Traxcell's Proposed Construction |
|---|---|
| "the first processor [determines/determining] a user's course or way (route) from one place to another composed of a number of segments" | Plain and ordinary meaning |

After receiving information specifying the location of the wireless mobile communication device, claim 1 further requires that "the first processor determines ***user navigation information*** and displays user navigation information according to the location of the wireless mobile communications device[.]" '147 patent, 128:11-17.  Once determined by the first processor, the "user navigation information" is sent to at least one other processor outside the network "as a number of segments," where the at least one other processor outside the network computes the expected time to travel through each of the segments based on traffic congestion information.  '147 patent, 128:17-29.

9

Traxcell conceded during a recent IPR involving the '147 patent that the term "navigation information" is not "clear on [its] face." Ex. 6 at 4. Traxcell asserted during a first IPR by Apple that "navigation information" means at least "a course or way (route) from one place to another." *Id.* at 5. More recently, in response to an IPR filed by Google, Traxcell and its expert again asserted that "navigation information" "includes at least 'a course or way (route) from one place to another'" and that "a POSITA would have understood from the '147 Patent and an ordinary meaning that the term 'navigation information' means the information of a route directed from one place to another composed of a number of segments." Ex. 8 at 5; Ex. 21 at 14 (declaration by Traxcell's claim construction expert, Robert Van Essen: "Thus, a POSITA would have understood from the '147 Patent and an ordinary meaning that the term 'navigation information' means the information of a route directed from one place to another composed of a number of segments.").

Traxcell's arguments during IPR unequivocally disavowed a certain meaning of the claims and prosecution disclaimer narrows the ordinary meaning of the claim consistent with the scope of the surrender. Traxcell construed "navigation information" in both IPR proceedings in an attempt to distinguish the prior art. For example, Traxcell attempted to distinguish *Myr* (U.S. Patent No. 6,480,783) because, according to Traxcell, *Myr's* first processor does not calculate ***a route*** using start point and a destination. Ex. 8 at 15-16 (Traxcell asserting that *Myr's* "vehicle 'GPS data' is simply positional information generated by a processor in a GPS chip on basis of information received from GPS satellites" corresponding to a start location only, and not a route from one place to another); *see also* Ex. 17 at 18. Similarly, Traxcell attempted to distinguish *Sakaraya* (WO 2001/28270) in an earlier IPR because, according to Traxcell, it sent only the "present location" of the mobile device to the

10

network, not "navigation information as a number of segments," as construed by Traxcell.  Ex.
6 at 19 ("As set forth above, although 'present location' is a part of navigation information,
'present location' itself is not 'navigation information', particularly, 'present location' is distinct
from 'navigation information as a number of segments' in '147 patent.").

Google's proposed construction is thus the one that Traxcell advanced in multiple IPR
proceedings.  During meet and confer, Traxcell confirmed that it no longer believed its own
proposed construction was accurate because it was "adding language that 'just wasn't there,'"
and that Traxcell "is not bound by its prior claim construction positions during IPR because the
PTAB has not issued a final decision" and because "claim construction is a 'rolling process.'"
Ex. 3 at 1.  To the extent Traxcell now contends that a different, broader construction of
"navigation information" is appropriate, Traxcell has disclaimed that construction.  *See Omega
Engineering, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323–24 (Fed. Cir. 2003)  ("[W]here the
patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of
prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with
the scope of the surrender.").  It is of no moment that the disclaimer occurred in a preliminary
patent owner response and the patent office has not issued a final written decision (because the
issue here is not collateral estoppel, but prosecution disclaimer, which arises from arguments
made to the patent office and does not depend on the finality of the proceedings).  *See Aylus
Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) (affirming prosecution
disclaimer based on statements patentee made in a preliminary response to a petition for an IPR:
"Extending the prosecution disclaimer doctrine to IPR proceedings will ensure that claims are
not argued one way in order to maintain their patentability and in a different way against
accused infringers.  In keeping with the underlying purposes of the doctrine, this extension will

11

'promote[] the public notice function of the intrinsic evidence and protect[] the public's reliance on definitive statements made during' IPR proceedings.") (internal citations omitted); *see also iLife Techs., Inc. v. Nintendo of Am., Inc.*, No. 3:13-cv-04987-M, 2017 WL 525708, at *7 (N.D. Tex. Feb. 9, 2017) ("[S]tatements during the IPR may be considered for prosecution disclaimer."); *HUAWEI Techs Co., v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 4385567, *3-*5 (E.D. Tex. Sept. 9, 2017), *report and recommendation adopted*, 2017 WL 4310161 (E.D. Tex. Sept. 28, 2017) (statements patentee made in responding to a petition for IPR resulting in prosecution disclaimer warranting summary judgment of noninfringement).

Moreover, the construction that Traxcell advanced during the IPRs remains consistent with the claim language and specification, regardless of whether a broader construction could apply in the absence of disclaimer.  Claim 1 requires that "the first processor further sends the user navigation information to the network ***as a number of segments***" and that these segments are updated with "traffic congestion information . . . by computing a numerical value for the segments corresponding to the expected time to travel through the segments." '147 patent, 128:17-25.  Explaining the operation of the claimed system, method and device, the specification describes that the segments, updated with traffic congestion information, are segments of a route:  "Each segment ***of a route*** could be analyzed and assigned a numerical figure representing the expected amount of time to travel through the segment." '147 patent, 118:18-21; *see also id.*, 116:16-18 ("The routing software 8120 then compares the velocities of the devices to the posted speed limits along the different segments ***of the route***.").  If the navigation information was not a course or route comprised of segments, the system of claim 1 would not be operable to "update[] the user navigation information in conformity with the numerical values for the segments" of the route.  '147 patent, 128:25-27.

12

Google's proposed construction (based on Traxcell's prosecution disclaimer) is also consistent with the extrinsic evidence.  As known to a POSITA, the term "navigation" is commonly defined as "the science of getting ships, aircraft, or spacecraft from place to place especially: the method of determining position, course, and distance traveled" or "the act of directing a ship, aircraft, etc. from one place to another, or the science of finding a way from one place to another[.]"  Ex. 12 at 2; Ex. 13 at 1.  This is the same extrinsic evidence upon which Traxcell and its expert relied in IPR proceedings.  Ex. 8 at 5.

Lastly, Google's proposed construction is consistent with the express language of the claim, which requires that "the first processor" make the determination and that the "user navigation information" is related to the "user" of the mobile communications device. Accordingly, in view of Traxcell's prosecution disclaimer, the claim language, specification, and extrinsic evidence, "the first processor [determines/determining] user navigation information" means "the first processor [determines/determining] a user's course or way (route) from one place to another composed of a number of segments."

### C.    "traffic congestion information" (claims 1, 11, 17, 22)

| Google's Proposed Construction | Traxcell's Proposed Construction |
|---|---|
| "information reflecting an abnormal slowdown based on a comparison between actual travel time and a normal travel time" | Plain and ordinary meaning |

Claim 1 requires that "at least one other processor outside the network updates the user navigation information in conformity with traffic congestion information accessible to the at least one other processor outside the network by computing a numerical value for the segments corresponding to the expected time to travel through the segments."  '147 patent, 128:19-25.  As reflected in Google's proposed construction, "traffic congestion information" means

"information reflecting an abnormal slowdown based on a comparison between actual travel time and a normal travel time." This construction comports with the language of the claim as well as with the specification. Braasch Decl., ¶ 47. A POSITA reading the claim in view of the specification would have understood that the actual travel time needs to be compared with a normal travel time to update the user navigation information with an expected time to travel through each of the segments of the route. Braasch Decl., ¶ 48. Traxcell contends that the term should be given its plain and ordinary meaning, but does not say what the plain and ordinary meaning is or why Google's construction departs from the plain and ordinary meaning. Ex. 3 at 1. *See O2 Micro*, 521 F.3d at 1360.

The '147 patent describes that the routing software 8125 "uses a ***unique and new method*** to check the level of traffic congestion along the route." '147 patent, 115:57-60. The specification explains that the direction assistance network ("DAN") calculates expected travel times for each segment of a route based on traffic congestion information. For example, the specification explains how traffic congestion is determined using geographic data:

> The routing software 8120 calculates the wireless device geographic density along the route. Average and normal density would be calibrated depending on the size and attributes of the road. For example, a larger road would have a different average density than a smaller road. A multilane highway would have a different average density than a two-lane highway. The average values for wireless device density on roads would have to be adjusted for various road attributes. The routing software 8120 evaluates the current levels and compares them to the average value.

> After the routing software 8120 calculates the traffic density measurement, the routing software 8120 evaluates the traffic conditions along any given route. ***The routing software 8120 compares the calculated traffic density to a predetermined normal level.***

> The comparison is described by the following: $D_r = D_c/D_n$, where $D_r$=density ratio, $D_c$=current density, and $D_n$=normal density.

14

'147 patent, 116:22-39.  The specification notes that "[u]sing this formula, the density ratio for any traffic congestion is calculated."  *Id.*, 116:40-41.  Thus, "if a current traffic density of a geographic region is 100 units/distance, and the normal density is 50 units/distance, then the density ratio would be 2" and  "[t]he density ratio corresponds to 2 times or 200% more traffic than the normal traffic density for that area."  '147 patent, 116:40-45.  A POSITA would have understood that geographic density information is used to determine traffic congestion by comparing current traffic density against the normal traffic density (with a density over 1 representing an abnormal slowdown).   Braasch Decl., ¶ 52.

Accordingly, a person of ordinary skill in the art at the time of the invention would have understood that "traffic congestion information" is "information reflecting an abnormal slowdown based on a comparison between actual travel time and a normal travel time."  Braasch Decl., ¶ 53.

### D.   "a second processor coupled to the at least one second radio-frequency transceiver" (claims 1, 11)

| Google's Proposed Construction | Traxcell's Proposed Construction |
|---|---|
| "a second processor electrically connected, directly or indirectly, to the at least one second radio-frequency transceiver" | Plain and ordinary meaning |

Claim 1 requires a "second processor coupled to the at least one second radio-frequency transceiver."  '147 patent, 128:34-35.  As reflected by Google's proposed construction, "a second processor ***coupled to*** the at least one second radio-frequency transceiver" means "a second processor ***electrically connected, directly or indirectly***, to the at least one second radio-frequency transceiver."  This construction adheres to the plain meaning of the claim language

because a POSITA would have understood that a processor and transceiver coupled together must be electrically connected, directly or indirectly.  Braasch Decl., ¶ 56.[4]

Although Traxcell did not propose a construction of the term, other than stating that it should be given its plain and ordinary meaning, it is apparent that Traxcell contends that "coupled to" does not require a direct or indirect electrical connection.  Rather, as revealed by Traxcell's infringement contentions, Traxcell intends to argue that the second processor need only be "***communicatively*** coupled to" the second radio frequency transceiver via a wireless communications network.  *See, e.g.*, Dkt. No. 23 at 71 (alleging that the Google Maps processors are "communicatively coupled to the second RF transceiver(s)" that comprise the base stations for wireless communication networks); Ex. 17 at 83 ("Google Maps has one or more processors that determine(s) the location of wireless mobile communications devices. These processors ***communicatively coupled*** to the second RF transceiver(s) and are programmed to determine a wireless mobile communication device's location.").  Thus, a dispute exists as to the scope and meaning of the claim language.  *See O2 Micro*, 521 F.3d  at 1360.

The claim does not recite or suggest that each component of the claimed wireless communications system is also "coupled to" all other components of the system by virtue of the ability to communicate via the wireless communication network.  Braasch Decl., ¶ 58.  To the

---

[4] Courts routinely construe "coupled to" to mean electronically connected, directly or indirectly. *See, e.g.*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech.*, No. 2:04-cv-00032, Dkt. 129 at 1 (E.D. Tex. Aug. 26, 2005)(Ex. 14) (construing the term "coupled" to mean "electrically connected, directly or indirectly."); *Intergraph Hardware Techs. Co. v. Hewlett-Packard Co.*, No. 2:02-cv-312, Dkt. 382 at 10 (E.D. Tex. Jun. 30, 2004) (Ex. 15) (construing the term "coupled" to mean "electrically connected, directly or indirectly."); *Avocent Redmond Corp. v. Rose Elecs.*, No. 2:06-cv-01711-RSL, Dkt. 348 at 8 (W.D. Wash. Feb. 6, 2012) (Ex. 16) (construing the term "coupled" as "electrically connected, either directly or indirectly").

extent Traxcell construes "coupled" to include "communicatively coupled," that construction is contradicted by the language of the claim, which differentiates the capability to communicate within a wireless communications network from a direct or indirect electrical connection between the second processor and the second radio-frequency transceiver.  For example, claim 1 requires "a first processor within the wireless mobile communications device [to be] ***coupled to*** the at least one first radio frequency transceiver." '147 patent, 128:3-5.  Even though the first processor can communicate with the second processor, via their respective transceivers, claim 1 does not require the first radio-frequency transceiver, which is coupled to the first processor, to also be "coupled to" the second radio-frequency transceiver, which is coupled to the second processor.  Braasch Decl., ¶ 58.  The only instance of the phrase "coupled to" describing a connection that is not a direct or indirect electrical connection appears in claim 11.  It states "a wireless mobile communications device coupled to the wireless communications network." '147 patent, cl. 130:4-5.  But even in that example, it is describing what a POSITA would have understood as a connection with the wireless communication network, not a connection between a component such as a processor and a radio frequency transceiver.

Instead, the claims use several phrases to denote the capability to communicate via the wireless communication network:

(i)     "configured for radio-frequency communications with a wireless communications network" ('147 patent, 127:67-128:2),

(ii)    "sends the user navigation information to the network" (*id.*, 128:17-18),

(iii)   "sends the updated user navigation information to the wireless mobile communications device" (*id.*, 128:28-30), and

17

(iv)    "the first processor requesting additional mapping information from at least one

other processor outside the wireless communications network" (*id.*, 128:60-63).

Braasch Decl., ¶ 61;  *see also See  Stasher, Inc. v. Zip Top, LLC*, No. 18-CV-00312-ADA, Dkt.

No. 42 at 5-6 (W.D. Tex. June 19, 2019) (Ex. 18) ("The Court agrees with the Parties'

contention that this term must be read in context of the claims in which it is used" and "the

Court determines that the appropriate construction of 'coupled to' should be: 'Two parts

connected or attached together.'").  Moreover, the applicants could have simply said

"communicatively coupled" in the claim, which is different from "coupled."  *See, e.g.*, *Digeo,*

*Inc. v. Audible, Inc.*, No. C05-464, Dkt. No. 47 at 7 (W.D. Wash. Mar. 27, 2006) (Ex. 19)

("'Communicatively Coupled' Means 'Connected in a Way that Permits Communication' . . .

'The ordinary meaning of the term 'coupled' is 'connected,' and the adverb 'communicatively'

suggests that the coupling is for the purpose of communication.").

      The specification does not use the phrase "coupled to," but its description of a laptop

processor connected to "transmit and receive control units" is in accord with Google's proposed

construction.  The specification notes that "the remote wireless devices can exist as [a] laptop

computer 2450 or another mobile computing device" that would "require an additional piece of

control hardware 2420 to control RF coding and decoding as well as the ability to function as

ana RF transmitter/receiver 2420 for an attached antenna 2430."  '147 patent, 29:52-57.  The

laptop includes a "[s]ufficient processor/memory and computing ability to run the query

software" and is connected via a physical data cable to an RF interface control

hardware/software unit, said unit including "transmit and receive control units" and an antenna

that communicate with a remote link.  *See* '147 patent, 14:42 ("2440 Data Cable"); 29:52-30:7

(laptop 2450 includes "[s]ufficient processor" connected to control hardware with connection

2440); 30:19-31 (discussing laptop connected to RF interface control hardware/software units); Figs. 24, 26.  As shown in Figure 26, laptop computer 2450 communicates (via the PCMCIA card 2410) with the control hardware via the connection 2440.  A POSITA would understand the connection between PCMCIA card 2410 and the control hardware via connection 2440 to be an indirect electrical connection.  Braasch Decl., ¶ 64.   Similarly, a POSITA would understand that the connection between power control unit 2660 and power source 2470 is an indirect electrical connection.  Braasch Decl., ¶ 65.   A POSITA would have understood the hardware/software unit to include a transceiver, *i.e.*, transmitter-receiver capable of transmitting and receiving over radio-frequency, electrically connected, directly or indirectly to a processor.  Braasch Decl., ¶ 66.  However, while Figure 26 depicts omnidirectional tx/rx antenna 2430, Figure 26 does not show that the antenna is connected to laptop 2450.  Braasch Decl,, ¶ 65.

Google's proposed construction is also consistent with the extrinsic evidence.  As known to a POSITA, the term "couple" is commonly defined as "to connect for consideration together  b: to join for combined effect 2 a : to fasten together : LINK b : to bring (two electric circuits) into such close proximity as to permit mutual influence."  Ex. 20 at 4.

The Court should reject Traxcell's contention, as revealed by its infringement contentions, that components are "coupled to" one another when they can send or receive messages over a wireless communications network and adopt Google's construction, which gives the term its plain and ordinary meaning consistent with the claim language, specification and extrinsic evidence.

## V.    CONCLUSION

For the reasons stated above, Google respectfully requests that the Court adopt the constructions of the terms above.

Dated:  June 9, 2022

Respectfully Submitted,

*/s/  G. Blake Thompson*
J. Mark Mann (SBN: 12926150)
mark@themannfirm.com
G. Blake Thompson (SBN: 24042033)
blake@themannfirm.com
MANN TINDEL THOMPSON
201 E. Howard St.
Henderson, TX 75654
Tel: 903-657-8540

Michael A. Berta
michael.berta@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3277

Nicholas H. Lee
nicholas.lee@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4156

David A. Caine
david.caine@arnoldporter.com
Assad H. Rajani
Assad.rajani@arnoldporter.com
5 Palo Alto Square
3000 El Camino Real, Suite 500
Palo Alto, CA 94306
Tel: 650-319-4500

Mark Samartino
mark.samartino@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel:  312-583-2437

*ATTORNEYS FOR DEFENDANT*
*GOOGLE LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 9, 2022, a true and correct copy of the

foregoing was served to the parties' counsel of record via ECF.

*/s/ G. Blake Thompson*
G. Blake Thompson